Judge Marshall
delivered the Opinion of the Court,
Tins'bill was filed by Hunt, for the purpose of rescind. ing a contract by which he had purchased three hundred acres of land from Weir, and of enjoining two judgments which had been obtained by Weir against, hjm, for the last two instalments of the purchase money. '\Yeir had bought the land under a decree of sale against Thomas Young, to whom it had been conveyed by William Mitch-_ . . , . . ell, the former proprietor. And the injunction and rescission are prayed for on the ground, that Mitchel was , r % . . . ° ,. , insane, and utterly incapable ot making a valid- contract, when he sold and conveyed the land to Young;, and that Malinda Sisk, his grand-daughter, and the sole represen,. tative of one of the five children whom' he left as his heirs at his death, had filed a. bill against her co-heirs, and also against Young, Weir and Hunt, for the purpose of setting aside the deed on account of the insanity of the grantor. The bill of Malinda Sisk, and all the pro-, ceedings in that suit, are referred to as parts of the pres,, ent bill, and the bill of Sisk, together with the answers of the principal defendants in that suit, is copied in this record.. But no other proceedings ia the case, are in, fact. *348 exhibited, and whether it is still pending, or what ha3 been its result, is not stated.
The title ofa ven dor is impeached as being derived from a mesne grantor, who con veyed, while in a state of insanity; hut the principal deft denies that allegation. The eviden.ce— voluminous and conflicting, leaving the fact doubtful: held, that ag the party seeking to invalidate the conveyance, is hound to make out his ground hy proof, he can have no relief up on this inconclusive evidence*
Weir is the only defendant in this suit, except the set curity of Hunt in the replevy bonds, who is made a party pro forma; and Weir positively denies the insanity of Mitchell, when he sold and conveyed the land.
On the question of insanity, a mass of evidence was taken by both parties; and there is much contradiction, both in the opinions expressed, and the facts stated, by the several witnesses. A large majority of them concur in representing Mitchell as being in such a condition of mind, during the year 1820, when the deed was made, and for several years before, and afterwards until his death, as rendered him. totally incapable of making a contract, or transacting any business understandingly. While others, of whom some were members of'his immediate family, state that, although very old, he had a competent knowledge of his own affairs, and exercised a general and intelligent control over his property, and over all contracts in relation to it. And the decided inference to be drawn from that portion of the testimony which relates directly to his agency in the sale and conveyance of the land in question, is that the sale and conveyance were his own voluntary acts, prompted by a reasonable judgment in regard to the value of the property, and a correct view of his own situation and of the future wants, and convenience of his family.
If this testimony is to be believed, we should be bound to conclude that, if Mitchell was at any time insane or a lunatic, he was in the enjoyment of a lucid interval when this transaction took place. But this conclusion can scarcely be reconciled to the current of the testimony in relation to the general condition of his mind. And as. the witnesses who speak most strongly in favor of hi? capacity to contract are. under a strong bias, and one of them at least interested on the side of the deed, though not interested in the event of this suit; the case would be attended with considerable difficulty if its determination depended upon an exact comparison of the weight of testimony, and a precise and peremptory solution of the question whether Mitchell had or had not, *349 at the date of the. deed, sufficient mental capacity to render its exeputipn liy him absolutely obligatory. -
The deed of an insane grantor passes the legal title to land— subject to be defeated, not by any party who maywishit overturned ; but by the heirs only, and at their election made under circumstances which do not pre elude' them. A purchaser seeking a rescission on the ground, that the title is derived through a mesne grantor who was insane, must show that' the conveyance of such grantor has been set aside, at the instande pf those who had a right to avoid it; 'or, at least, that such proceedings are pending as will, in all probability, produce that result,
mesne grantor A purchaser of land seeks to rescind his contract, on the ground, ' that a was insane when he made the deed, and produces the record of a suit, still pending and undetermined, instituted by an heir, to avoid the deed of the supposed lunatic; but it appears, by the record, that his sale of the land was beneficial to himself, bis family and heirs; and the proof of his insanity not conclusive: held, that there is no ground for the rescission asked for by the complainant. '
We are of opinion, however, that a positiye decision of this perplexed question of fact, is not essential in the present case, for two reasons: first-— because a complain? ant vybo seeks, the rescission of a contract on account of a defect of title depending on a collateral fact of this character, is bound to make satisfactory proof of thq fact on which he relies. And if he leaves the fact in doubt, this, upon the final hearing, is a sufficient objection to granting the relief prayed for.
But, further, the fact that Mitchell was insane at the time of executing the deed in question, if fully establish? ed, would not be sufficient to authorize the rescission asked for by the complainant; unless it also appeared, either that the. deed h$d been set aside or at least that such proceedings had been instituted for that purpose as must ip all probability, result in avoiding it. For if the grantor were insane, still his deed passed the legal title, subject to be defeated, not' by the mere allegation and proof of the fact of insanity, by any one who might feel an interest in overturning the deed; but, after the death of the grantor, only at the election of his heirs, made under circumstances which do not preclude them from setting it aside, It is for the purpose of showing that the proper steps have been taken, by the proper-person, for setting aside the deed, that the suit pf Malipda Sisk has been introduced into this record. If that suit had been terminated by decree; the parties to this suit, being also parties to that, would have been bound by it. But as it does not appear that, any decree has been rendered in that suit, we can only determine from the pleadings and evidence contained in this record, whether the pendency and prosecution of that suit to avoid the deed under which Weir claims the land, presents a case of such certain and imminent danger to his title, as to authorize a rescission of the contract for its purchase. '
*350 We think it does not. For admitting that Mqlinda Sisk will prosecute her suit with due zeal and diligence, and admitting also, what is by no means certain, that one of several heirs may avoid a deed in part, on the ground of insanity, without the concurrence or against the consent cf the others—which must be admitted or she cannot succeed—and conceding further, that the pendency of her suit, even wdth a reasonably certain prospect of success, would be a proper ground for rescinding this contract, before the actual termination of the suit referred to—it seems to us, upon a consideration of the circumstances under which she is attempting to avoid the deed, that her right to the relief which she asks and consequently the prospect of her obtaining it, is, to say the least of it, too uncertain to be the basis of a decree of rescission in the present case.
The sale which Malinda Sisk seeks to invalidate appears to have been highly advantageous in regard to the price obtained for the land; and the price has been actually received and enjoyed by the grantor, or those of his heirs, who. would have been entitled to the land itself, if he had remained the owner till his death. The facts to he collected from the pleadings a,nd evidence in this case are substantially these. William Mitchell, the grantor, having given to his three children by a first wife, their just proportion of his estate, intended that the two remaining children by a second wife should have the three hundred acres of land now in. question. But upon consultation between him and them, it was determined to purchase another tract, of about two hundred acres, in lieu of this tract of three hundred acres, over which the other was believed to possess some advantages. This purchase was accordingly effected; and the three hundred acres were sold as the only means of paying for the other tract. To which object the proceeds of the sale were applied as far as necessary. In this arrangement, Elizabeth Mitchell the mother of Malinda Sisk, being then a feme sole, and over twenty-one years of age, fully acquiesced; and William H. Mitchell the other one of the two younger children, was the active agent ip carrying it into effect, and now by his answer sustains *351 it. It may be assumed that the three elder children Concur with him in desiring that the estate as settled should not be disturbed. _
After the death of William Mitchell, the father, his daughter Elizabeth being then married to Andrew Sisk, the two hundred acre tract and so much of the proceeds of the sale of the other tract as remained were divided between William H. Mitchell and Sisk and wife. And since the death of the wife, Sisk has either sold and conveyed (as intimated by some of the witnesses) or continues to enjoy that portion of the two hundred acres which was allotted to them. These circumstances may hot amount to an actual confirmation of the deed, but they place Malinda Sisk, the grand daughter, in a very unfavorable attitude for obtaining the aid of a Court of Equity, to avoid it. What motive is there for setting aside an advantageous sale of land, merely on account of insanity in the vendor, when the proceeds of the salo have been invested by him, in other lands, equally valuable, which have passed to the same persons who would have been entitled to the lands which were sold? Is it equitable, that while one half of the two hundred acre tract, which may be said to have been received in exchange for the three hundred ames, is held under the right of Elizabeth Sisk as heir of William Mitchell,’MaJ linda Sisk should, in right of the same heir, claim also to have one half -or any portion of the three hundred acre tract? She does not offer to surrender the two hundred acres or the half of it, and she cannot surrender it, because she has no immediate right to it; Aild if she succeeds iii invalidating the deed conveying the three hundred acres, who shall refund the purchase money received for it? Will She be permitted, at her mere will, to throw this burthen upon the other heirs, who have received no more than their just proportions of the estate? Or will the Chancellor, at her mere election, break up án arrangement which when made was acceptable to all' concerned, and was afterwards acquiesced in, by those having the right to question it, and which cannot be broken up without certain confusion and probable injury?
*352 We do not, of course, intend, in this suit, to pronouncó decisively upon the rights of Malinda Sisk. We cannot judicially do sot But we may say, and are bound to say, that her right to set aside this deed, and the suit by which she asserts it, are of too doubtful a character, ánd too uncertain in their issue, and in their effect Upon the title of Weir, to constitute a sufficient ground for setting aside his contract of sale to Hunt, even if the insanity of William Mitchell were established. And as that fact is itself, also doubtful, dpon the evidence, and as it does not Appear, that Hunt will be remidiless, even if the deed should be ultimately avoided, we have no difficulty in approving of the decree dismissing the complainant’s bill.
The decree of the Circuit Court is thereforé affirmeds